IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADOPLH HENRY LOVE, JR., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No.   13-cv-222-MJR-SCW |
| ALPHONSO DAVID, DAVID A. FOLSOM, and KAREN BOYD, | ) ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

**WILLIAMS, Magistrate Judge:**

## I.   Introduction

This case is before the Court on a Motion for Summary Judgment filed by Alfonso David (Docs. 42 & 43) and a Motion for Summary Judgment filed by David Folsom (Docs. 44 & 45). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).**   It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** Defendant David's motion for summary judgment (Docs. 42 & 43) and **GRANT IN PART AND DENY IN PART** Defendant's Folsom's motion for summary judgment (Docs. 44 & 45).

## II.   Findings of Fact

**A.   Procedural Background**

On March 6, 2013, Plaintiff filed his Complaint against Defendants David A. Folsom and Alfonso David, alleging retaliation and deliberate indifference to his medical needs (Doc. 1). Specifically, Plaintiff alleged that prior to being transferred to Shawnee Correctional Center he was

diagnosed with spine inflammation and arthritis (Doc. 9). On arriving at Shawnee on November 30, 2011, Plaintiff sought diagnosis and treatment for his conditions but he was never examined (*Id.* at p. 2). Specifically, Plaintiff alleges that Defendant David never examined his spine for inflammation or arthritis, ordered testing, or referred Plaintiff to a specialist (*Id.*). Defendant David also did not provide Plaintiff with a low bunk permit. Plaintiff also alleges that on January 15, 2012, he was beaten by a cellmate, causing him rib pain, blurry vision, migraines, and memory loss, but Defendant David would not order any tests (*Id.*).

Plaintiff also alleges that his health further deteriorated in March 2012 when he was placed in segregation and Defendant Folsom forced him to sleep on the cell floor (*Id.*). As a result, Plaintiff was bitten by a spider on his forearm and leg, causing his leg to become swollen and to later develop a staph infection (*Id.* at pp. 2-3). Plaintiff alleges that Defendant David and Folsom were deliberately indifferent to this injury.

Plaintiff also alleges that Defendant Folsom retaliated against him for using the grievance system to complain about his medical issues (*Id.* at p. 3). Because Plaintiff wrote grievances, Plaintiff alleges that Defendant Folsom wrote two disciplinary tickets against Plaintiff, forced him to sleep on the floor and then on the top bunk, threatened Plaintiff with the loss of his personal property, and intercepted his mail (*Id.*). Plaintiff's Complaint alleges a claim of deliberate indifference against both Defendants David and Folsom, as well as a claim of retaliation against Defendant Folsom.

In response to Plaintiff's Complaint, both Defendants Folsom and David filed motions for summary judgment, arguing that Plaintiff had failed to exhaust his administrative remedies. Both Defendants' summary judgment motions allege that Plaintiff failed to exhaust his administrative remedies because he failed to appeal his grievances to the ARB.

Defendant David's motion for summary judgment noted that three grievances were

received by the ARB on February 29, 2012 (Doc. 43). Two of those grievances were dated January 16, 2012 and dealt with medical treatment. The January grievances state that he was treated by an unnamed nurse or paramedic for a January 15, 2012 altercation with his cellmate but do not name Defendant David or indicate that he was seen by a doctor (Doc. 43-1 at pp. 32-45). Plaintiff only indicates in those grievances that he was having a difficult time seeing a doctor.

Plaintiff also filed a grievance on March 18, 2012, which he notes in his response (Doc. 58 at p. 9; Doc. 1-4 at pp. 88-92). Plaintiff's grievance alleges that he was diagnosed with lower back arthritis and that Shawnee Correctional Center has inadequate medical care for his back as Defendant David is not a chiropractor (Doc. 1-4 at pp. 88-92). Plaintiff's grievance was reviewed by the counselor on April 6, 2012 and in that response Defendant David indicated, in a memorandum dated April 3, 2012, that he had not seen Plaintiff for low back pain but would request his medical records and evaluate him (*Id.* at pp. 88, 92). Plaintiff maintains that he sent that grievance to the grievance officer by placing the grievance in his segregation cell door but never received a response (Doc. 58 at p. 10). Plaintiff's April 18, 2012 grievance also related to medical care by Defendant David. This grievance was reviewed by his counselor on April 17, 2012 and subsequently by the grievance officer on June 18, 2012 (Doc. 43-3 at p. 25). The chief administrative officer concurred with the denial of his grievance on June 18, 2012 (*Id.*). Plaintiff's response indicates that he submitted the grievance to the ARB by placing the grievance in his segregation cell door but he never received a response (Doc. 58 at p. 12).

The last grievance Plaintiff alleges that he filed in regards to Defendant David was a grievance submitted on June 1, 2012 (Doc. 1-5). This grievance dealt with a spider bite he received while being required to sleep on the floor of his segregation cell (*Id.*). Plaintiff's grievance was received on June 12, 2012 and denied by the counselor on July 5, 2012 (*Id.*). The counselor noted that

the injury was treated and he recovered. Plaintiff then appealed the grievance to the grievance officer and Plaintiff indicates that he received a memorandum from grievance officer Seip on July 5, 2012 with no other markings (*Id.* at p. 5). Plaintiff conceded in his response that he did not send the grievance to the ARB because they would not accept the grievance without a form response from the grievance officer (Doc. 58 at p. 13).

Defendant Folsom's motion for summary judgment focuses on two grievances filed by Plaintiff, one on March 30, 2012 and one dated April 8, 2012 (Docs. 44 & 45). The March 30, 2012 grievance was not received, according to Defendant's motion, until June 15, 2012 and thus was returned as untimely (Doc. 1-6 at pp. 29-32). The April 8, 2012 grievance was returned by Plaintiff's counselor as being a duplicate of the March 30, 2012 grievance (*Id.* at p. 48). Plaintiff's response indicates that the counselor responded to his March 30, 2012 grievance on April 11, 2012 and that he forwarded the grievance to the grievance officer within the required timeframe and that the decision that it was untimely was incorrect (Doc. 60 at p. 8). As to the April 8, 2012 grievance, Plaintiff's response indicated that he forwarded the grievance to the grievance officer after receiving a response from the counselor that it was a duplicate of the March 30, 2012 grievance, but never got a response to the grievance (*Id.* at p. 9). Plaintiff's response also indicated that he filed another grievance on March 30, 2012, which he labeled an "appeal" (Doc. 60 at p. 7). In this grievance, Plaintiff indicated that Defendant Folsom wrote him two disciplinary tickets for sleeping on the cell floor and forced him to sleep in the top bunk even though he had a low bunk permit. Plaintiff indicates that he submitted this grievance to counselor Lynn but never received a response (*Id.* at p. 8).

**B.** *Pavey* **Hearing**

Because the undersigned found that there were issues of fact as to whether Plaintiff exhausted his administrative remedies, the Court conducted a hearing on December 17, 2013 in

accordance with *Pavey v. Conley*, **544 F.3d 739, 742(7th Cir. 2008).**

### 1. *Defendant David*

As to the claims against Defendant David, the undersigned limited the testimony and evidence to the March 18, 2012 and April 18, 2012 grievance. It was clear to the undersigned that the January 16, 2012 grievances did not mention Defendant David or any other doctor. Further, a February 8, 2012 grievance mentioned in Plaintiff's response was not related to Plaintiff's claims against Defendant David as it grieved shift officers' practice of failing to provide Plaintiff with grievance forms in English (Doc. 1-4 at pp. 86-87). Thus, the undersigned found that Plaintiff only submitted two grievances regarding Defendant David's deliberate indifference. The first grievance was submitted on March 18, 2012. Plaintiff received a response to the grievance from his counselor. Plaintiff argued that he pursued the grievance with the grievance officer but never received a response, while Defendant David argued that Plaintiff never submitted his grievance to the grievance officer and thus failed to exhaust that grievance. The second grievance related to the claims against Defendant David was filed on April 18, 2012 but the ARB never received the grievance. Plaintiff argues that he pursued the grievance with the ARB but never received a response.

Plaintiff testified at the hearing that he submitted his March 18, 2012 grievance to grievance officer Kendra Seip by placing his grievance in the disciplinary segregation cell door. He submitted the grievance after receiving a response from the counselor. Plaintiff testified that he did not know the exact date that he submitted his grievance to Kendra Seip as the counselor holds grievances longer than the 60 day time period allowed for responses. He acknowledged that the counselor received his grievance on April 6, 2012 and that he believed he got a response back on April 3, 2012 and submitted the grievance to Seip on the same day.

Plaintiff acknowledged that while in segregation he also submitted letters to be mailed

through the United States Postal Service in the same manner as submitting a grievance, by placing the grievance in the disciplinary segregation cell door. Plaintiff also acknowledged that on May 9, 2012 he received a letter from Dr. Louis Schicker which was in response to letters that Plaintiff wrote. Plaintiff wrote these letters on March 28, 2012 and he acknowledged that they were also placed in the segregation door on that date and delivered. Plaintiff testified that although the correctional officers did not tear up his letter, the correctional officers have the choice to tear up grievances he puts in the bars to the ARB.

As to the April 18, 2012 grievance, Plaintiff indicated that he did receive a response from both Seip and the warden. The grievance was reviewed on June 18, 2012. He also claims that he put this grievance in his cell doors to be mailed to the ARB. Plaintiff acknowledged that the grievance did not have his signature on the section indicating he was seeking an appeal, but that it was a mistake and that he forgot to sign it. Plaintiff maintained that the guards held his grievances and that his grievances were not responded to.

### 2. *Defendant Folsom*

As to Defendant Folsom, Plaintiff filed a grievance related to those claims on March 30, 2012. Defendant Folsom maintained that Plaintiff never submitted the grievance to the ARB because there was no documentation from the ARB indicating they received the grievance. Plaintiff acknowledged at the hearing that he did not send the grievance to the ARB after receiving it back from the grievance office as the ARB would need a legitimate response from the grievance officer, not just a response that it was untimely. Plaintiff also filed a grievance on April 8, 2012, but Defendant argued that the grievance officer never received the grievance after it was labeled a duplicate by the counselor. The parties agreed that the March 30, 2012 grievance was returned by the grievance officer as untimely (See Doc. 45 at ¶ 4).

Plaintiff filed two grievances on March 30, 2012. Plaintiff's first March 30, 2012 grievance related to staff conduct, specifically, Defendant Folsom's incorrect handling of inmate's mail in segregation (Doc. 1-6 at pp. 29-31). The counselor received Plaintiff's grievance on April 5, 2012 (*Id.* at p. 29) and issued a response on April 11, 2012 (*Id.*). Plaintiff maintains that he received the response from the counselor on May, around May 1, 2012. Plaintiff stated that he sent the grievance to the grievance officer on the same date. The grievance officer ultimately returned Plaintiff's grievance to him on June 15, 2012, indicating that the grievance was filed outside of the 60 day time period (Doc. 1-6 at p. 32). Plaintiff testified that he did not attempt to follow up with the grievance officer in any way because the grievance officer held the grievance until it was out of time. He also admitted that he did not pursue the grievance with the ARB because he believed they would not accept it because it didn't have a response on the merits.

Plaintiff's second grievance written on March 30, 2012, is listed as an "appeal" and appealed a disciplinary decision on March 14, 2012 issued by Defendant Folsom who forced him to the top bunk when he saw Plaintiff lying on the floor and Plaintiff refused; the grievance also alleged that Defendant Folsom purposefully moved him into a segregation cell with another inmate who had a lower bunk permit (*Id.* at pp. 33-34). Plaintiff testified that he submitted this grievance to his counselor and never received a response.

As to the April 8, 2012 grievance, the grievance dealt with Defendant Folsom's treatment of Plaintiff while he was housed in segregation (Doc. 1-6 at pp. 48-52). Plaintiff noted that he had to sleep on the floor and was disciplined by Folsom for sleeping on the floor and refusing to move to the top bunk (*Id.*). The grievance was denied by Plaintiff's counselor on April 17, 2012 as a duplicate grievance (*Id.*). Plaintiff testified that he would have sent the grievance to the grievance office on the same day because that is what he always does when he receives a grievance back, he sends

it back out the same day.

At the hearing, Defendants also called Kendra Seip, who is currently a correctional counselor II at Shawnee Correctional Center. During the time Plaintiff was filing his grievances at issue in this case, Seip was a grievance officer. Seip testified that she reviewed specifically for the April 8, 2012 grievance in her grievance log to see if it was responded to. She testified that a grievance is logged by the grievance officer only if the grievance receives a response from the grievance officer. A grievance would not be logged if it was not filled out correctly (had a procedural defect) or was returned as being untimely. Seip testified that the April 8, 2012 grievance was sent back to Plaintiff for being untimely, but was not in her log. The April 8, 2012 grievance was received on June 15, 2012 and returned the same day as being untimely. She testified that she did not receive the March 30, 2012 grievance. She admitted that she was not asked to look for the March 30, 2012 grievance and that she did not have her grievance logs in front of her.

Counselor Daniel Lynn also testified regarding Plaintiff's grievances. Lynn testified that he was Plaintiff's correctional counselor from April to July of 2012. Lynn's contact with inmates is recorded in the cumulative counseling summary. Lynn testified that he sent the March 30, 2012 grievance regarding Folsom's handling of Plaintiff's mail back to Plaintiff on April 11, 2012. He does not know what, if anything, Plaintiff did with the grievance after it was returned to him. He had no further communication with Plaintiff about that grievance. He also responded to Plaintiff's April 8, 2012 grievance and responded on April 17, 2012. He does not recall if Plaintiff ever spoke to him about issues with receiving responses to his grievances from the grievance officer as there is no entry in his cumulative counseling summary.

**C.      Subsequent Filings**

At the close of the hearing, the undersigned noted that the grievance logs that were

submitted by Defendants were illegible and directed Defendants to submit grievance logs from March through July 2012, which reflected grievances filed by Plaintiff during those dates. Subsequently, Defendant David filed grievance logs from April, June, and July of 2012. The logs reflect that the grievance officer reviewed grievances from Plaintiff on April 4, 2012, June 18, 2012, and July 27, 2012 (Doc. 82). Especially of note is a grievance reviewed by Seip on April 4, 2012. The log indicates that the topic of the grievance was an IDR, or disciplinary report. The log does not offer any identifying information as to which grievance was reviewed; there is no grievance number nor does it list the date the grievance was written by the inmate. The log also does not indicate whether the grievance was returned to Plaintiff.

### III. Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the

time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

A.     **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800** *et seq.* The grievance procedures first require inmates to speak

with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In

order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

**B.     Analysis**

### 1.     *Defendant Alfonso David*

As to Plaintiff's claims against Defendant David, the undersigned finds that Plaintiff did not fully exhaust his grievances. The Court notes that the January 16, 2012 grievances are unrelated to the claims against Defendant David as they do not mention Defendant David or grieve any issues related to treatment by a doctor. The grievances only discuss treatment Plaintiff received from a nurse or paramedic after suffering injuries on January 15, 2012. Further, the February 8, 2012 grievance mentioned by Plaintiff in his response is unrelated to Defendant David as Plaintiff admits that he grieves the failure of prison staff members to provide him with a grievance form in English. Plaintiff's grievance from June 1, 2012 regarding the spider bite to his leg was also not exhausted because Plaintiff admittedly failed to pursue the grievance with the ARB after receiving only a memorandum back from the grievance officer.

Plaintiff, however, submitted two grievances related to his allegations against Defendant David, one on March 18, 2012 and one on April 18, 2012. While Plaintiff pursued both

grievances part way through the grievance process, there is no evidence that he completed the grievance process on either grievance. As to the March 18, 2012 grievance, Plaintiff did not submit his grievance to the grievance officer and the April 18, 2012 grievance he failed to appeal to the ARB.

Plaintiff argues that he tried to exhaust both grievances by placing them in his cell bars to be mailed by the prison guards, but that the guards thwarted his efforts to exhaust his grievances. The undersigned, however, does not find his testimony to be credible. There is no evidence in the record that the correctional guards destroyed his grievances. In fact, the evidence suggests that Plaintiff's other grievances reached their destination when submitted by Plaintiff. While Plaintiff maintains that the guards did not submit his March 18, 2012 grievance to the grievance officer, there is evidence that his April 18, 2012 grievance, sent in the same way by Plaintiff as his March 18, 2012 grievance reached both his counselor, who reviewed the grievance on April 26, 2012, and then subsequently was received by the grievance officer when he sent the grievance out after receiving it back from the counselor (Doc. 1-4 at pp. 88-99).[1] Further, although Plaintiff maintains he mailed his April 18, 2012 grievance to the ARB, the copy of the grievance he provided to the Court does not contain his signature on the Committed Person's Appeal to the Director portion of the grievance, suggesting that it was not sent to the ARB.

Not only was Plaintiff's other grievance sent and received by prison officials, but Plaintiff's outgoing mail also was sent out of the prison. Plaintiff acknowledged that he sent a letter to a Dr. Elyea and Gale Gladson outside of the correctional facility on March 28, 2012. Plaintiff received a response to that letter on May 9, 2012 indicating that the letter he sent had been received (Doc. 1-4 at pp. 58-62).[2] Plaintiff testified that he sent outgoing mail, such as the letter to Elyea and

---

[1] The April 18, 2012 grievance was received and reviewed by the grievance officer on June 18, 2012 (Doc. 1-4 at p. 97).
[2] Although the Dr. Shicker sent to Plaintiff on May 9, 2012 indicated that Plaintiff's letter to Dr. Elyea and

Gladson, in the same manner that he sent out grievances, by placing them in the bars of his cell. Thus, there is evidence in the record that both Plaintiff's mail and grievances were being delivered around the same time that he submitted his March 18, 2012 and April 18, 2012 grievances.

As the evidence in the record suggests that Plaintiff's mail was being properly delivered, the undersigned finds his testimony that the guards destroyed his March 18, 2012 and April 18, 2012 grievance not to be credible. There is no evidence that the guards destroyed the grievances and, in fact, the evidence in the record suggests that his grievances and mail were being delivered on a regular basis. Thus, there is no evidence in the record to suggest that Plaintiff submitted his March 18, 2012 grievance to the grievance officer or that he submitted his April 18, 2012 grievance to the ARB. As neither grievance was fully pursued through the entire exhaustion process, the undersigned **FINDS** that Plaintiff failed to exhaust his administrative remedies as to Defendant David and **RECOMMENDS** that the Court **GRANT** Defendant David's motion for summary judgment (Docs. 42 & 43).

### 2. Defendant David Folsom

The undersigned, however, finds that Plaintiff has exhausted some of his claims against Defendant Folsom. Plaintiff concedes that he received the March 30, 2012 grievance regarding Folsom's handling of his mail back from the grievance officer as untimely. He also concedes that he did not appeal the grievance to the ARB. The undersigned notes that Kendra Seip testified that the untimely grievance she received on June 15, 2012 was actually the April 8, 2012 grievance, but she did testify that she responded to the grievance as untimely. The undersigned found Seip's testimony to be unreliable on this point. Seip testified that she did not have the grievance logs in front of her and that a grievance that was returned as untimely would not be listed in

---

Gale Gladson as not dated, the attached letter that Plaintiff sent is dated March 28, 2013 (Doc. 1-4 at pp. 58-59).

the grievance log. Thus it is unclear to the undersigned how Seip knew that the April 8, 2012 grievance was the one that was returned as untimely in light of the fact that she had no documentation in her records as to this grievance. Further, the parties agreed that it was the March 30, 2012 grievance that was returned as untimely and Seip's response to the grievance followed the March 30 grievance in Plaintiff's Complaint. It is clear to the undersigned that the March 30, 2012 grievance was returned as untimely and Seip was incorrect about the April 8, 2012 grievance. As to the March 30, 2012 grievance, Plaintiff conceded that he did not seek an appeal with the ARB. Even if Plaintiff's grievance was denied on procedural grounds, he still had an obligation to pursue the grievance to the ARB. Plaintiff admits that he did not do so. As Plaintiff failed to appeal the grievance to the ARB, the undersigned **FINDS** that Plaintiff failed to exhaust his administrative remedies as to his claim that Folsom was creating a dangerous environment between Plaintiff and his cellmate by Folsom's improper handling of the inmates' mail.

However, as to the March 30, 2012 that Plaintiff has labeled an "appeal", the Court finds that Plaintiff did all that he could to exhaust this grievance. Plaintiff's March 30, 2012 "appeal" alleges that Folsom filed a grievance against him for lying on the floor and that Folsom ignored his low bunk permit, requiring Plaintiff to sleep either on the floor or the top bunk. Plaintiff testified that he submitted the "appeal" grievance to counselor Lynn and that it disappeared and he never received it back. As the grievance was an appeal of a disciplinary report it should have been submitted to the grievance officer instead of counselor Lynn. Grievance officer Seip testified that she did not receive a March 30, 2012 grievance, although the undersigned notes that she did not have her grievance log in front of her at the hearing and admitted that she only searched for the April 8, 2012 grievance. Thus, Seip could not adequately determine that she had not received the March 30, 2012 grievance as the documents which would show what grievances she received were not with her at the hearing.

The Court subsequently ordered that defense counsel supplement the summary judgment motions with the grievance logs. The grievance logs were submitted on December 17, 2013 (Doc. 82). A review of the April grievance log shows that a grievance appealing a disciplinary report was received by the grievance officer on April 4, 2012 (Doc. 82 Ex. 1 at p. 2). This grievance was reviewed by the grievance officer and denied on April 4, 2012 (*Id.*). There is no indication from the log when or if the grievance was returned to Plaintiff as that section of the log has been cut off. Plaintiff also testified that he never received a response to the grievance. Further, there are no identifying numbers or dates which indicate which of Plaintiff's grievances were received on April 4, 2012. It is the Defendant's burden to show that Plaintiff failed to exhaust this grievance, yet they have failed to provide any information or reliable testimony to suggest that the March 30, 2012 "appeal" was not received by the grievance officer and that the grievance received on April 4, 2012 is some other grievance. Given that the nature of the grievance was labeled as an IDR, or disciplinary report, and no other grievances dealing with a disciplinary report were submitted by Plaintiff around that time, the undersigned is left with the no other conclusion than that the grievance received by the grievance officer was the March 30, 2012 "appeal" grievance.

Without any further information regarding the grievance log, which Defendant failed to provide and Seip failed to testify to, the undersigned finds that the grievance officer received Plaintiff's "appeal" grievance on April 4, 2012 but never returned the response to Plaintiff. The logs do not indicate that the grievance was returned, nor has Defendant offered any testimony or evidence suggesting that the grievance was returned to Plaintiff. Thus, Plaintiff never received a response to the grievance and, at that point, the undersigned finds that Plaintiff had done all he could to exhaust his March 30, 2012 "appeal". See **Walker v. Sheahan**, 526 F.3d 973, 979 (7th Cir. 2000) (**an inmate is not required to appeal his grievance if he submits the grievance to the proper**

**authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at *3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting** *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)).** Plaintiff was not required to pursue his grievance any further after failing to receive a response. The undersigned, accordingly, **RECOMMENDS** that the Court find that Plaintiff has exhausted his claims as to Defendant Folsom as Defendant has failed to meet his burden of showing that Plaintiff failed to exhaust the March 30, 2012 "appeal".

Further, as to the April 8, 2012 grievance although it was determined to be a duplicate grievance, the counselor's response was never clear as to what grievance it was a duplicate of. A close reading of the grievance reveals that it was a duplicate of the March 30, 2012 "appeal" grievance as it discusses Plaintiff's placement in a segregation cell where he was required to sleep on the top bunk even though he suffered from lower back arthritis. As the undersigned has already determined that Plaintiff exhausted his March 30, 2012 "appeal" grievance, it does not need to determine whether the April 8, 2012 grievance was fully exhausted as it was labeled a "duplicate" grievance.

Thus, the undersigned **RECOMMENDS** that the Court find that Plaintiff has exhausted his retaliation claim and claim that Defendant Folsom was deliberately indifferent to his lower back pain by requiring him to sleep on the top bunk. Plaintiff has failed to exhaust his claim regarding Folsom's treatment of his mail. Further, a reading of March 30, 2012 "appeal" grievance indicates that Plaintiff did not grieve his spider bite against Defendant Folsom and the only grievance including allegations regarding the spider bite, the June 1, 2012 grievance, was not appealed to the

ARB.  Thus the undersigned **FINDS** that Plaintiff failed to exhaust that claim as well.  However, Plaintiff's claims that Folsom retaliated against him and was deliberately indifferent to his low back pain survives summary judgment.

## IV.    Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has failed to exhaust his administrative remedies against Defendant David, but that he has exhausted some of his claims against Defendant Folsom, **GRANT** Defendant David's motions for summary judgment, and **DISMISS** the claims against Defendant David **without prejudice**, and **GRANT IN PART AND DENY IN PART** Defendant Folsom's motion for summary judgment**.**  The undersigned also **RECOMMENDS** that Plaintiff's claims against Defendant Folsom involving intercepting Plaintiff's mail and deliberate indifference to his spider bite be **DISMISSED without prejudice** for failure to exhaust.

Should the Court adopt this Report and Recommendation, the undersigned also **RECOMMENDS** that the Court **FIND AS MOOT** Plaintiff's Motion Requesting Leave to Solve Significant Matter (Doc. 37) as Plaintiff's motion involves his current status in segregation and does not involve any claims currently before the Court.  Further, if this Report and Recommendation is adopted, the only claims remaining will be Plaintiff's deliberate indifference claim against Defendant Karen Boyd and the deliberate indifference to Plaintiff's lower back pain and retaliation claims against Defendant Folsom.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals**.**  *See, e.g., Snyder v. Nolen***, 380 F.3d 279, 284 (7th Cir.**

**2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **February 18, 2014**.

      **IT IS SO ORDERED**.
      DATED: January 31, 2014.

                                                  */s/ Stephen C. Williams*
                                                STEPHEN C. WILLIAMS
                                                United States Magistrate Judge