IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADOLPH HENRY LOVE, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   13-cv-222-MJR-SCW |
| | ) |
| DAVID A. FOLSOM and KAREN BOYD, | ) |
| | ) |
| Defendants. | ) |

### REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

#### I.   Introduction

This case is before the Court on a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 101 and 102) filed by Karen Boyd. The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** Defendant Boyd's Motion for Summary Judgment (Docs. 101 and 102).

#### II.   Findings of Fact

**A.   Procedural Background**

On October 4, 2013, Plaintiff filed his Amended Complaint against Defendants David A. Folsom, Alfonso David, and Karen Boyd. Plaintiff alleged that Defendants were deliberately indifferent to his serious medical needs. Specifically, Plaintiff alleges that Karen Boyd was deliberately indifferent in treating his injuries following a physical altercation on January 15, 2012 and was also deliberately indifferent to a spider bite that he received.

In response to Plaintiff's Complaint, Defendant Boyd has filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies. Defendant Boyd points to three grievances which dealt with the claims against her. Defendant notes that three grievances were received by the ARB on February 29, 2012, two of which were dated January 16, 2012 (Doc. 43-1 at pp. 31-43). Those two grievances alleged that Plaintiff was attacked by his cellmate on January 15, 2012 which caused him physical injuries. Plaintiff alleged that he was taken to the healthcare unit and seen by a nurse or paramedic, but Plaintiff received no x-rays or pain medication (*Id.* at pp. 34 and 42). The grievances were reviewed by his counselor and returned to him on February 3, 2012 (*Id.* at p.41). The grievance was received by the ARB on February 29, 2012 and returned to Plaintiff for failure to attach the grievance officer's response (*Id.* at pp. 31-32). The grievance logs contain no record that this grievance was filed with the grievance officer (Doc. 82-1).

A second grievance was dated April 18, 2012 and also dealt with medical treatment following his January 15, 2012 altercation with his cellmate. The grievance was reviewed by his counselor and subsequently by the grievance officer on June 18, 2012 (Doc. 43-3 at p. 25). The chief administrative officer concurred with the denial of his grievance on June 18, 2012 (*Id.*). Plaintiff alleges in his responsive brief that he submitted the grievance to the ARB but failed to sign the form indicating his appeal. The ARB has no record of the grievance. A third grievance, dealing with the spider bite he received while in segregation was submitted June 1, 2012. The grievance was denied by the counselor on July 5, 2012 (Doc. 1-5). Plaintiff appealed the grievance to the grievance officer and Plaintiff indicates that he received a memorandum from grievance officer Seip on July 5, 2012 with no other markings (*Id.* at p. 5). Plaintiff stated in his response that he made photo copies of the grievance response but he did not appeal the grievance to the ARB because they would not have accepted the grievance without the proper form from the grievance officer (Doc. 106 at p. 9).

The Court notes that Defendants Folsom and David previously filed motions for summary judgment arguing that Plaintiff had failed to exhaust his administrative remedies against them. Both motions dealt with two of the grievances relevant to Defendant Boyd including the April 18, 2012 and June 1, 2012 grievances. At the *Pavey* hearing on those motions, Plaintiff argued that he received a response from both grievance officer Seip and the warden as to the April 18, 2012 grievance. He also testified that he put the grievance in his cell doors to be mailed to the ARB (Doc. 89 at p. 6). Plaintiff acknowledged that the April 18, 2012 grievance did not have his signature on the section indicating he was seeking an appeal, but he claimed he merely forgot to sign it (*Id.*). The undersigned found, and District Judge Reagan ultimately agreed, that Plaintiff had failed to exhaust his April 18, 2012 grievance (*Id.* at pp. 13-14; Doc. 90). The undersigned noted that Plaintiff did not sign the Committed Person's Appeal to the Director portion of the grievance, suggesting that it was not sent to the ARB, and there was evidence that Plaintiff's other outgoing mail was sent out of the prison, suggesting that any grievance sent out by Plaintiff in the same manner would have reached its destination (*Id.*). This evidence suggested that Plaintiff did not submit his grievance to the ARB and the undersigned found not credible Plaintiff's testimony to the contrary (*Id.* at p. 14). As to the June 1, 2012 grievance, Plaintiff admitted in his responsive brief to Defendants' motion that he did not submit the grievance to the ARB because they would not have accepted the grievance without a form response from his grievance officer and Plaintiff only received a memorandum from grievance officer Seip regarding the June 1, 2012 grievance (Doc. 89 at p. 4; Doc. 58 at p. 13).

**B.**   *Pavey* **Hearing**

Because the undersigned found that there were issues of fact as to whether Plaintiff exhausted his administrative remedies, the Court conducted a hearing on January 7, 2015 in accordance with *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** The undersigned limited

evidence and argument to the grievances dated January 16, 2012 as it had previously taken evidence as to the April 18, 2012 grievance and the undersigned noted all that was left was a purely legal issue. The undersigned also noted that Plaintiff conceded in his responsive brief that he had not appealed his June 1, 2012 grievance to the ARB and that his justification for not appealing the grievance left the Court with a purely legal issue that did not require a hearing.

Plaintiff testified about his January 16, 2012 grievance. Plaintiff testified that he submitted the grievance on January 16, 2012 and received a response from his counselor on February 3, 2012 (See also Doc. 43-1 at p. 41). Plaintiff testified that he submitted the grievance to the grievance officer the next day, on February 4, 2012, but that he never received a response from the grievance officer. Plaintiff stated that since he did not receive a response, he went ahead and submitted the grievance to the ARB where it was received on February 29, 2012 (See also Doc. 43-1 at p. 41). Plaintiff acknowledged that the grievance officer had two months under the administrative rules to respond to the grievance, but he indicated that he knew the grievance officer would not respond. Plaintiff testified that he knew the grievance officer would not respond because other grievances which the grievance officer had addressed were returned to him within days or weeks. According to Plaintiff, it never took the entire two month time period allotted for the grievance officer to respond to a grievance. Plaintiff also testified that he knew that the grievance officer would not respond because his grievance dealt with a major issue, specifically medical care following an assault, and the grievance officer would not rule on those types of grievances in order to keep inmates from exhausting their administrative resources. Plaintiff pointed to other grievances that his grievance officer did not respond to as evidence that she would not have responded to his January 16, 2012 grievance. Thus, Plaintiff testified, that he went ahead and sent the grievance to the ARB before the grievance officer's time had expired because he knew she would not respond.

### III. Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. **2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth

the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

**A.     Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800** *et seq.* The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance

and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the

inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

**B.     Analysis**

Here, the Court finds that Plaintiff has failed to exhaust his administrative remedies as to Defendant Boyd.   Defendant Boyd points to three grievances in the record that deal with Plaintiff's claims against her.   Grievances regarding her treatment of his injuries following the January 15, 2012 altercation with his cellmate were dated January 16, 2012 and April 18, 2012.   Further, Plaintiff filed a June 1, 2012 grievance dealing with his spider bite.   None of the three grievances were fully exhausted.

### 1.     *January 16, 2012 Grievance*

Here, the undersigned finds that Plaintiff failed to exhaust his January 16, 2012 grievance.   Plaintiff testified that he submitted the grievance to his counselor and it was returned to him on February 3, 2012.   The grievance itself indicates that the grievance was ruled on by the counselor on February 3, 2012 (Doc. 43-1 at p. 41).   Plaintiff testified that he submitted his grievance to the grievance officer on February 4, 2012 and when he did not receive a response, he mailed his grievance directly to the ARB.   The ARB records indicate that the grievance was received by them on February 29, 2012.   However, if Plaintiff did not receive his grievance back from the grievance officer, as he testified, then Plaintiff would be deemed to have properly exhausted his retaliation claim because his efforts to properly exhaust would be deemed thwarted.  *See* ***Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** ***Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his**

resources); *Brown v. Darnold*, 2010 WL 3702373, at *3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).

The undersigned, however, finds Plaintiff's testimony that he submitted his grievance to the grievance officer to lack credibility. Plaintiff testified that he submitted his grievance to the grievance officer on February 4, 2012 and that he then submitted his grievance to the ARB when he did not hear back from the grievance officer. The grievance log, however, does not show that Plaintiff submitted a grievance with the grievance officer (Doc. 82-1).

Further, Plaintiff's grievance was received by the ARB on February 29, 2012, well before the grievance officer's deadline to respond had expired. Plaintiff testified that he sent the grievance to the ARB in less than thirty days after he had submitted it the grievance officer for review because he knew the grievance officer wouldn't respond. Plaintiff testified that this was because the grievance officer had not responded to other major grievances, including grievances regarding medical care, so he believed that the grievance officer would not respond to this grievance, which also alleged major medical issues. However, Plaintiff's claims are not reflected in the record. In fact, there are numerous instances where the grievance officer responded to his grievances. His grievance officer even responded to his April 18, 2012 grievance on June 18, 2012 and that grievance was also regarding medical care for injuries he sustained from the attack by his cellmate (Doc. 1-4 at pp. 88-97). Thus, the undersigned finds Plaintiff's testimony that his grievance officer did not respond to grievances regarding medical care to lack credibility as the same grievance officer subsequently responded to a later grievance regarding medical care.

Given Plaintiff's lack of credibility regarding the grievance officer's responses and the

evidence in the record, the undersigned finds that the evidence before it indicates that Plaintiff did not submit his grievance to the grievance officer before sending the grievance to the ARB. There is simply no evidence that he tried to submit the grievance to the grievance officer as Plaintiff testified. The undersigned does acknowledge that there were some issues with some of Plaintiff's later grievances. In fact, the undersigned previously found that Plaintiff had exhausted a March 30, 2012 grievance because grievance officer Seip could not determine whether she had received the grievance regarding Plaintiff's disciplinary report, which Seip never responded to, when Plaintiff had improperly submitted to the counselor and later grievance logs showed that she had in fact received the grievance on April 4, 2012 (Doc. 89 at p. 15). However, Plaintiff's January 16, 2012 grievance presents a very different situation as there is no evidence that he submitted the grievance to the grievance officer. None of the logs indicate that a grievance was received. Further, there was evidence that Plaintiff's other grievances were received by the grievance officer as reflected in the logs (See Doc. 89 at p. 13). That there is no record of his January 16, 2012 grievance indicates that he never submitted it to the grievance officer. This conclusion is also supported by the fact that Plaintiff did not wait for a response but instead forwarded the grievance to the ARB. The more logical conclusion, given the record and the timing of the filing with the ARB, is that Plaintiff believed that the grievance officer would not respond, as he testified, and so he went ahead and submitted his grievance directly to the ARB. This, however, does not constitute exhaustion. As Plaintiff did not submit his grievance to the grievance officer, the undersigned finds that he failed to exhaust his administrative remedies as to this grievance.

  2. *April 18, 2012 Grievance*

    As to the April 18, 2012, the Court has already found that Plaintiff failed to fully exhaust this grievance. Defendant David previously argued that Plaintiff failed to exhaust his

administrative remedies with his April 18, 2012 grievance because he failed to submit the grievance to the ARB. The undersigned took evidence on that issue and ultimately determined that Plaintiff did not attempt to submit his grievance to the ARB as he testified to at the hearing. The undersigned noted that Plaintiff failed to sign the portion of the grievance indicating an appeal, there was evidence that his other outgoing mail was successfully sent out of the prison, and there was no evidence to suggest that the guards had destroyed his grievance if he had placed it in the bars for mailing as he alleged (Doc. 89 at pp. 13-14). As the Court has already previously found that Plaintiff failed to fully exhaust his April 18, 2012 grievance, the Court need not decide again that Plaintiff failed to exhaust under the "law of the case doctrine." The doctrine states that once an issue is "litigated and decided, that should be the end of the matter." *Creek v. Village of Westhaven*, **144 F.3d 441, 445 (7th Cir. 1998).** As the Court has previously ruled that Plaintiff failed to exhaust his April 18, 2012 grievance, that issue is fully decided and the Court's previous ruling will stand. Plaintiff did not exhaust his April 18, 2012 grievance.

### 3. *June 1, 2012 Grievance*

Further, the Court finds that Plaintiff admittedly did not fully exhaust his June 1, 2012 grievance. Plaintiff stated in his responsive brief that he did not submit the grievance to the ARB because he believed that they would not accept the grievance as his grievance officer had only provided him with a memo in response to his grievance and not the proper grievance officer response form. However, exhaustion is required even if an inmate believes that it is futile. *See Dole v. Chandler*, **438 F.3d 804, 808-09 (7th Cir. 2006);** *Obriecht v. Raemisch*, **517 F.3d 489, 492 (7th Cir. 2008).** Thus, Plaintiff had to at least attempt to exhaust his administrative remedies by submitting his grievances to the ARB, even if he thought the grievances would ultimately not be accepted by the ARB. Further, there is no evidence, other than Plaintiff's own personal belief, to

suggest that the ARB would not have accepted his grievance as Plaintiff did receive a response from the grievance officer, just not a response on the usual form. As Plaintiff failed to at least attempt to have his grievance reviewed by the ARB, the undersigned finds that Plaintiff failed to exhaust his June 1, 2012 grievance.

### IV.    Conclusion and Recommendation

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies against Defendant Boyd, **GRANT** Defendant Boyd's motion for summary judgment (Docs. 101 and 102), and **DISMISS without prejudice** Plaintiff's claims against Defendant Boyd.

Should the Court adopt the undersigned's findings and recommendation, the only claim that will be left is Plaintiff's claims that Defendant Folsom was deliberately indifferent to Plaintiff's lower back pain and that Folsom retaliation against him.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **January 30, 2015**.

**IT IS SO ORDERED**.
DATED: January 13, 2015.

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge

Page **12** of **12**